United States District Court
Southern District of Texas
**ENTERED**
January 13, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAMELA ONG, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:18-CV-3577 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Pamela Ong filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for supplemental security income. Ong and the Commissioner moved for summary judgment. Dkts. 15, 16. After considering the pleadings, the record, and the applicable law, the court **DENIES** Ong's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the decision of the Commissioner.[1]

### **I. Background**

**1. Factual and Administrative History**

Ong filed her claim for social security benefits on October 1, 2015 alleging the onset of disability as of that date. Tr. at 11. The agency denied her claims on initial review and reconsideration. The administrative law judge (ALJ) held video hearings on January 18, 2017 and August 3, 2017 at which Ong and a vocational expert, Wallace A. Stanfill, testified. The ALJ issued an unfavorable decision denying Ong benefits on September 22, 2017. The Appeals

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. Dkt. 10.

Council denied review on July 31, 2018 and the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

2. **Standard of Review**

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

3. **Disability Determination Standards**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. In the second step, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to

determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §404.1545). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton*, 209 F.3d at 452-53.

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Ong did not engage in substantial gainful activity after her alleged onset date of October 1, 2015. Tr. at 13. The ALJ found that Ong had the severe impairments of "lumbar and cervical degenerative disc disease, asthma, obesity, edema in her lower extremities, and left carpal tunnel syndrome," none of which met or equaled the severity of a listed impairment. *Id.* at 13-15.

The ALJ next found that Ong had the residual functional capacity to perform light work, with the following additional limitations:

> [C]laimant can stand and/or walk for no more than four hours with normal breaks and she can sit for six hours in an eight-hour workday. The clamant who is right handed can also occasionally balance, stoop, bend, kneel, crawl, crouch, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. Moreover, the claimant can occasionally handle, finger, and feel with her left upper extremity. The claimant can also perform occasional bilateral overhead reaching. Additionally, the claimant can have occasional exposure to temperature extremes, damp or dry conditions, gas, fumes, dust, smoke, chemicals, hazards, dangerous

equipment or machinery, and unprotected heights, and she can occasionally drive and use foot controls bilaterally. Finally, the claimant will need to elevate her legs at least 12 inches from the floor for one hour in an eight-hour workday; however, this one hour could coincide with breaks or a lunch period.

*Id.* at 16. The ALJ further found Ong could not perform her past work as a porter. *Id.* at 22. However, based on the testimony of a vocational expert in response to a hypothetical question, the ALJ concluded at step five of his analysis that Ong was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and thus was not disabled under the Act. *Id.* at 23.

## II. Analysis

Ong asserts two errors in her Motion for Summary Judgment: (1) the ALJ erred in failing to find her urinary incontinence and urgency to be a severe impairment; and (2) the ALJ erred in giving little weight to the consulting examiner's opinion, which the ALJ had requested after the first hearing.

### A. The ALJ did not err in finding Plaintiff's urinary incontinence non-severe.

At step two of his sequential analysis, the ALJ found:

The claimant also has the following non-severe impairment: mixed urinary incontinence, stress predominate (Ex. 28F/5). However, treatment notes indicated that the claimant underwent physical therapy for this impairment (Ex. 31F). It was also noted that the claimant's incontinence was doing well with medications (Ex. 5F/12-13, 23; 13F/7, 20; 29F/13). Thus, this impairment is non-severe, as it is only a slight abnormality, which has such a minimal effect on the claimant that it would not be expected to interfere with her ability to work irrespective of age, education, or work experience.

Tr. at 13. The ALJ cited the correct legal standard in the Fifth Circuit for a severity determination. *See Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) ("Re-stated, an impairment is severe if it is anything more than a slight abnormality that would not be expected to interfere with a claimant's ability to work."). The ALJ must consider all impairments, including those that are not

4

severe, in making an RFC determination. *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011); *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). Therefore, when the ALJ does not stop his analysis at step 2 the severity ruling is not a basis for remand if his ultimate disability ruling is supported by substantial evidence. *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (Because the ALJ did not decide Herrera's case at step two, but rather concluded that Herrera retained the residual functional capacity to do other work, "the ALJ's failure to assess the severity of Herrera's anxiety or learning impairments at step two is not a basis for remand."); *McFarland v. Saul,* No. 4:18-CV-00711-O, 2019 WL 3927298, at *5 (N.D. Tex. Aug. 20, 2019) ("[A]pplication of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process and considers the impairments in the subsequent stages of the five-step analysis."); *Garcia v. Berryhill*, 880 F.3d 700, 705 n.6 (5th Cir. 2018) ("Any error at step two would likewise be harmless, given that the ALJ concluded at step four, on the basis of substantial evidence, that Garcia retained the ability to perform his past relevant work as a produce broker.").

The ALJ did not stop at step 2 and made his disability ruling at step 5 of the sequential analysis. Therefore, the ALJ did not err if his RFC determination is supported by substantial evidence. The ALJ noted that "the claimant testified that she urinates frequently, as she goes to the bathroom about two times per hour." Tr. at 16-17. However, "[t]he ALJ found the medical evidence more persuasive than the claimant's own testimony [and those] are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The references to Ong's frequent urination are based on Ong's self-reporting. The only testing for urinary issues evidenced in the medical record is a CST (cough stress test) performed in June 2017, which was negative. Tr. at 1234. The medical evidence indicates that

5

her urinary issues improved with medication. Tr. at 13, 829, 840. Ong's physical therapist reported that with treatment Ong should return to normal functioning, Tr. at 1350, and Ong testified that physical therapy seems to help her condition. Tr. at 331.

In addition to referencing medical evidence indicating Plaintiff's condition is not as severe as she alleges, the ALJ explained that Ong "has described daily activities, which are inconsistent with her complaints of disabling symptoms and limitations." *Id.* at 17. Specifically, he noted that she prepares meals, cleans, makes her bed, and does laundry; uses public transportation, shops in stores, and attends church; is able to handle money, pay bills, count change, handle a savings account, and use a check book or money order; she reads, watches television, does word searches; spends time with others, gets along with family, friends, neighbors, and others. *Id.*

In short, the ALJ found that Ong's subjective allegations regarding the severity of her urinary incontinence were inconsistent with the record as a whole. It is the ALJ's province to weigh all of the evidence to determine a claimant's RFC. *See Greenspan v. Shalala*, 38 F.3d 232, 238 (5th Cir. 1994) ("The power to judge and weigh evidence includes the power to disregard, and we must uphold that determination if supported by substantial evidence."). The court finds no reversible error by the ALJ on this point.

**B. The ALJ did not err in according little weight to consulting examiner's opinion.**

At the first hearing on January 18, 2017, the ALJ concluded that certain of Ong's conditions appeared to be worsening. He ordered a consultative examination by an orthopedic doctor, including a low back x-ray, as well as a spirometry (breathing) test to help assess her asthma. Tr. at 302-03.

Dr. Daryl K. Daniel examined Ong on February 10, 2017. He submitted a medical source statement opining that Ong could lift and carry 50 pounds occasionally and 20 pounds frequently;

could stand for 2 hours, walk for 2 hours, and sit for 8 hours in an 8-hour work day; and had few additional postural, manipulative, or environmental limitations. Tr. at 1109-1117. The ALJ gave Dr. Daniel's opinion partial weight because the objective medical evidence supports the standing and walking limitations, but "the evidence also supports that the claimant has greater lifting, postural, environmental, reaching, and manipulative limitations." Tr. at 21.

Dr. V. Leroy Willits examined Ong on February 10, 2017. He also submitted a medical source statement. Dr. Willits opined that Ong could lift and carry 20 pounds frequently; could sit and stand for three hours, walk for one hour, and lie down for one hour in an 8-hour workday; requires the use of a cane to ambulate; could frequently reach in all directions, including overhead, as well as handle, finger, feel, push, and pull with her right upper extremity; could occasionally push, pull, and reach in all directions, including overhead, with her left upper extremity, but could never handle, finger, or feel with the left extremity; could never operate foot controls; could occasionally stoop but never balance, kneel, crouch, crawl, climb stairs, ramps, ladders or scaffolds; could never be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme temperatures, and occasionally be exposed to vibration; and could never operate a motor vehicle. Tr. at 1123-1133. The ALJ gave little weight to Dr. Willits's opinion "because the objective medical evidence does not support the extreme limitations" therein, "including the sitting limitations and the need to lie down as well as the severe postural and environmental limitations." Tr. at 22. Further, many of the limitations in Dr. Willits' statement are inconsistent with his own examination findings, such as that she was in no acute distress, her lungs were clear to auscultation, she did not have edema in her extremities, she was able to get up and down off the examination table without obvious difficulty and could sit, stand, move about, and pick up light objects off the floor. *Id.*

Plaintiff cites no authority for her contention that the ALJ erred in giving little weight to Dr. Ellis's opinion because he ordered the consultative examination. The ALJ need not accept any medical opinion in its entirety but rather must determine Plaintiff's RFC based on the record as a whole. *Gray v. Astrue*, No. 1:09-CV-0101-BI, 2011 WL 856941, at *5 (N.D. Tex. Mar. 11, 2011) ("The RFC assessment is based upon *"all* of the relevant evidence in the case record, including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations." Emphasis in original). It is the ALJ's job to assess all the objective and subjective evidence, and to resolve conflicts in the evidence. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). In addition to the opinion of Dr. Daniel, Plaintiff's medical records, and Plaintiff's activities of daily living, the ALJ also properly considered and gave partial weight to the opinions of State Agency medical consultants, Dr. Kavitha Reddy and Dr. Patty Rowley, both of whom opined that Ong could perform light work with some additional limitations. Tr. at 19-20. Plaintiff takes issue with the weight the ALJ placed on Dr. Willits's report, but it is the ALJ's task and not this Court's to determine the weight of a consultative examiner's report. *Garcia v. Colvin*, 622 F. App'x 405, 409 (5th Cir. 2015). The court concludes that the ALJ did not commit reversible error in according little weight to the opinion of Dr. Willits.

### III.  Conclusion and Order

For the reasons discussed above, the court **DENIES** Ong's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the final decision of the Commissioner.

Signed on January 13, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge